1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SUSAN K., | ) | Case No.  CV 18-8096-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |
| | ) | |

## I.

## **INTRODUCTION**

On September 18, 2018, plaintiff Susan K. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB").  The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the

1

Administrative Law Judge ("ALJ") properly considered the opinion of plaintiff's treating physician; and (2) whether the ALJ improperly rejected plaintiff's subjective symptom testimony.  Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 2-21; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-12.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of plaintiff's treating physician with respect to her mental impairments, but erred in rejecting the opinion of plaintiff's treating physician as to her physical impairments, and erred in discounting plaintiff's subjective symptom testimony.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 32 years on the alleged disability onset date, has a college education.  AR at 90, 127.  Plaintiff has past relevant work experience as an urban planner. *Id*. at 123.

On March 18, 2014, plaintiff filed an application for a period of disability and DIB, alleging an onset date of December 1, 2012 due to chronic pain syndrome, post-traumatic stress disorder ("PTSD"), anxiety, depression, and back injury. *Id*. at 127.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 160-69.

On September 13, 2017, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 83-126.  The ALJ also heard testimony from Alan Cummings, a vocational expert. *Id*. at 122-26.  On September 28, 2017, the ALJ denied plaintiff's claim for benefits. *Id*. at 16-25.

1    Applying the well-known five-step sequential evaluation process, the ALJ
2    found, at step one, that plaintiff had not engaged in substantial gainful activity
3    from December 1, 2012, the alleged onset date, through December 31, 2015, the
4    date last insured. *Id*. at 18.

5    At step two, the ALJ found plaintiff suffered from the following severe
6    impairments: a history of third degree burn injuries, status post multiple
7    reconstructive surgeries; and residual chronic pain syndrome due to nerve damage.
8    *Id.*

9    At step three, the ALJ found plaintiff's impairments, whether individually or
10   in combination, did not meet or medically equal one of the listed impairments set
11   forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id*. at 19.

12   The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and
13   determined that through the date last insured she had the RFC to perform light
14   work, with the limitations that she: must avoid concentrated exposure to fumes,
15   odors, and other respiratory irritants; could not climb ladders, ropes, and scaffolds;
16   and was limited to occasional climbing of stairs or ramps, stooping, kneeling,
17   crouching, and crawling. *Id*. at 19.

18   The ALJ found, at step four, that plaintiff could perform her past relevant
19   work as an urban planner. *Id.* at 25. Consequently, the ALJ concluded plaintiff
20   did not suffer from a disability as defined by the Social Security Act. *Id.*

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1      Plaintiff filed a timely request for review of the ALJ's decision, which was

2   denied by the Appeals Council. *Id.* at 1-6. The ALJ's decision stands as the final

3   decision of the Commissioner.

4                                    **III.**

5                          **STANDARD OF REVIEW**

6      This court is empowered to review decisions by the Commissioner to deny

7   benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

8   Administration must be upheld if they are free of legal error and supported by

9   substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

10  (as amended). But if the court determines the ALJ's findings are based on legal

11  error or are not supported by substantial evidence in the record, the court may

12  reject the findings and set aside the decision to deny benefits. *Aukland v.*

13  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

14  1144, 1147 (9th Cir. 2001).

15     "Substantial evidence is more than a mere scintilla, but less than a

16  preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

17  "relevant evidence which a reasonable person might accept as adequate to support

18  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

19  F.3d at 459. To determine whether substantial evidence supports the ALJ's

20  finding, the reviewing court must review the administrative record as a whole,

21  "weighing both the evidence that supports and the evidence that detracts from the

22  ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

23  affirmed simply by isolating a specific quantum of supporting evidence.'"

24  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

25  Cir. 1998)). If the evidence can reasonably support either affirming or reversing

26  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

27  of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

28

4

1  1992)).

2                                          **IV.**

3                                   **DISCUSSION**

4  **A.      The ALJ Properly Considered the Opinion of the Treating Physician**

5          **Regarding Plaintiff's Mental Impairments, But Not Plaintiff's Physical**

6          **Impairments**

7          Plaintiff argues the ALJ failed to properly consider the opinion of her

8  treating physician, Dr. Eric Dunlop.  P. Mem. at 2-17.  Specifically, plaintiff

9  contends the ALJ's reasons for rejecting Dr. Dunlop's opinion were not specific,

10 legitimate, and supported by substantial evidence.

11         In determining whether a claimant has a medically determinable impairment,

12 among the evidence the ALJ considers is medical evidence.  20 C.F.R. §

13 404.1527(b).[2]  In evaluating medical opinions, the regulations distinguish among

14 three types of physicians:  (1) treating physicians; (2) examining physicians; and

15 (3) non-examining physicians.  20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81

16 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's

17 opinion carries more weight than an examining physician's, and an examining

18 physician's opinion carries more weight than a reviewing physician's."  *Holohan v.*

19 *Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2).

20 The opinion of the treating physician is generally given the greatest weight because

21 the treating physician is employed to cure and has a greater opportunity to

22 understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

23 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

24         Nevertheless, the ALJ is not bound by the opinion of the treating physician.

25 *Smolen*, 80 F.3d at 1285.  "[T]he ALJ may only reject a treating or examining

26 _____

27     [2]   All citations to the Code of Federal Regulations refer to regulations

28 applicable to claims filed before March 27, 2017.

                                          5

1  physician's uncontradicted medical opinion based on 'clear and convincing

2  reasons.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (*citing*

3  *Lester*, 81 F.3d at 830-31).  "Where such an opinion is contradicted, however, it

4  may be rejected for 'specific and legitimate reasons that are supported by

5  substantial evidence in the record.'" *Id.* (quoting *Lester*, 81 F.3d at 830-31).  The

6  opinion of a non-examining physician, standing alone, cannot constitute substantial

7  evidence.  *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *Lester*, 81 F.3d

8  at 831.

9        **1.**    **Medical Opinions and Records**

10          **a.**    **Treating Physicians**

11  *Dr. Eric Dunlop*

12        Dr. Eric Dunlop, a family physician, treated plaintiff from December 2012

13  until at least June 2016.  AR at 347-360, 455-69, 536-44, 601-06, 835-42, 847.  Dr.

14  Dunlop diagnosed plaintiff with complex regional pain syndrome, asthma,

15  depression, PTSD, chronic pain syndrome, vitamin D deficiency, urinary tract

16  infections, irritable bowel syndrome, and fibromyalgia.  *Id.*  Plaintiff was treated

17  with medication, and recommended to try acupuncture and massage therapy.  *Id.*

18        On August 8, 2014, Dr. Dunlop opined plaintiff had an overall poor

19  functional capacity, and on days when her pain was exacerbated plaintiff could not

20  stand or sit longer than 15 to 20 minutes at a time without changing positions,

21  could not walk for more than a few minutes, and could not lift, carry, or handle

22  objects.  *Id.* at 538, 542.  Dr. Dunlop further opined plaintiff had poor

23  concentration and difficulty adapting to her environment due to her pain,

24  depression, and PTSD.  *Id.* at 538, 544.  He explained plaintiff rarely used

25  medication to control her pain because previous medications had caused significant

26  side effects, were ineffective, or had addictive properties.  *Id.*

27        On March 17, 2015, Dr. Dunlop opined plaintiff could sit, stand, and walk

28

for three hours total in an eight-hour workday and occasionally lift and carry objects up to five pounds. *Id.* at 601. Dr. Dunlop further opined that plaintiff's symptoms were aggravated by sitting for extended periods, walking, running, carrying, and lifting, plaintiff's depression and PTSD contributed to her physical symptoms and limitations, plaintiff was unable to do full-time work, and her symptoms and related limitations applied as far back as December 2012. *Id.*

On June 15, 2016, Dr. Dunlop opined plaintiff could: sit for one hour in an eight-hour workday; stand or walk for three hours in an eight-hour workday; occasionally lift up to five pounds; and that emotional factors contributed to the severity of plaintiff's symptoms and functional limitations. *Id.* at 835, 838, 840.

*Dr. Brian Buchanan*

Dr. Brian Buchanan, a chiropractor, treated plaintiff from September 2012 to May 2013. *Id.* at 343-46, 361-411. Plaintiff complained of headaches, right shoulder pain, right arm pain, neck discomfort, mid-back pain, low back pain, left hip pain, and left leg pain. *Id.* at 343-46. Dr. Buchanan noted plaintiff's treatment was "conservative" and involved gentle adjustments of plaintiff's cervical, thoracic, and sacral iliac joints, as well as manual cervical traction, stretching, myofascial release, and trigger point therapy. *Id.* at 345. Dr. Buchanan diagnosed plaintiff with possible neurological impingement, and possible Lyme Disease or Reflex Sympathetic Dystrophy. *Id.* Dr. Buchanan did not provide an opinion about plaintiff's functional limitations, but noted that although plaintiff had initially "improved greatly" with adjustments, he believed plaintiff was "in serious pain, and she really needs help." *Id.*

*Dr. Zoe Wells*

Dr. Zoe Wells, a practitioner of natural health medicine, treated plaintiff from December 2012 to August 2017 for chronic pain. *Id.* at 412-34, 470-99, 532-35, 560-93, 599-600, 843-46, 942-44. Dr. Wells recommended plaintiff take

1   natural supplements and Chinese herbal medicine, and use acupuncture,
2   chiropractic manipulation, yoga, meditation, and massage therapy to manage her
3   pain.  *Id.*  On August 4, 2014, Dr. Wells opined that plaintiff could: lift and carry
4   10 pounds occasionally and less than 10 pounds frequently; stand and walk for at
5   least two hours but less than six hours in an eight-hour workday; sit less than six
6   hours in an eight-hour day; had various limitations with climbing, stooping,
7   kneeling, crouching, and crawling, but not with reaching, handling, fingering, or
8   feeling; and could not work around heights, moving machinery, or excessive noise.
9   *Id.* at 532-35.  On August 11, 2014, Dr. Wells opined plaintiff could: lift 5 to 10
10  pounds frequently and carry 5 to 10 pounds occasionally; could sit, stand, or walk
11  for one to two hours in an eight-hour workday; would frequently have pain,
12  fatigue, or other symptoms severe enough to interfere with attention and
13  concentration; and would be likely to be absent from work more than three times a
14  month because of her impairments or treatments.  *Id.* at 567-71.  On August 12,
15  2017, Dr. Wells opined plaintiff would not be able to work full-time in any
16  competitive work environment, but would be able to work part-time in an
17  environment where she can change her position frequently from sitting to standing
18  and have periods of walking and stretching.  *Id*. at 942-44.
19       *Brittany Bell, PA-C*
20       Brittany Bell, a physician's assistant at Central Coast Family Health, saw
21  plaintiff from March to August 2017 for her pain.  *Id.* at 868-901.  Plaintiff
22  reported medication did not ease her pain and one medication – cyclobenzaprine –
23  did help but she did not want to take it while breastfeeding.  *See, e.g., id.* at 871-72.
24  Plaintiff was referred for a pelvic and abdominal ultrasound for her abdominal
25  pain, as well as blood testing.  *Id.* at 886-90, 945-57, 972-77.  The ultrasound
26  concluded that "no explanation for symptoms [was] demonstrated."  *Id*. at 889.  On
27  August 29, 2017, PA-C Bell opined plaintiff was disabled.  *Id.* at 981-82.
28

*R.N. Linda Mainhart*

Linda Sleeter Mainhart, an R.N., treated plaintiff for persistent anxiety and chronic pain in 2012 and 2013. *Id.* at 546-53, 595-98. The treatment provided included education on chronic pain cycles and relaxation techniques such as meditation, mindfulness, deep breathing, imagery, walking, yoga, and using recorded meditations. *Id.* at 546-47. R.N. Mainhart noted plaintiff was too fearful to take medication prescribed by Dr. Dunlop, and opined on August 6, 2014 that plaintiff could not maintain a job in her present state. *Id.* R.N. Mainhart also noted that she had not seen plaintiff in-person after 2013, and only spoke to her on the phone in 2014. *Id.*

*Other Medical Treatment*

Plaintiff received physical therapy treatment from various medical providers from May 2014 to June 2016. *Id.* at 501-24, 800-34, 848-51, 856-62, 902-31. Plaintiff was admitted to the emergency room at Arroyo Grande Community Hospital on August 4, 2017 complaining of chronic pain and was discharged later that day with prescriptions for anxiety and pain medication. *Id.* at 932-35. Plaintiff was seen by a physician at Pacific Central Coast Health Centers on August 8, 2017, and referred to specialists for her PTSD and complex regional pain syndrome. *Id.* at 936-41. Plaintiff was also treated by Dr. Thomas Rosplock, a chiropractor, from August 2016 to August 2017. *Id.* at 960-71.

Plaintiff received acupuncture and other naturopathic treatments from various medical providers from June 2012 to February 2017 (*id.* at 320-42, 436-54, 791-95, 863-67, 978-80), as well as marriage and family counseling from October 2016 to August 2017 (*id.* at 958-59).

Various medical providers at the Center for Pain and Supportive Care treated plaintiff from February 2012 to February 2016 for her pain. *Id.* at 607-790. Plaintiff was diagnosed with complex regional pain syndrome, myositis,

9

1  radiculopathy in the thoracolumbar region, thoracic or lumbosacral neuritis, and

2  insomnia, and was prescribed medication, physical therapy, and exercise.  *Id.*  No

3  opinion was provided on plaintiff's functional limitations.

4         **b.**    **Examining Physicians**

5      *Dr. Lucia McPhee[3]*

6         Dr. Lucia McPhee, a physiatrist, evaluated plaintiff on August 12, 2014 for a

7  state disability claim, and opined plaintiff could: lift or carry 20 pounds

8  occasionally and 10 pounds frequently; stand or walk for at least two hours but less

9  than six hours in an eight-hour day; sit for six to eight hours in an eight-hour day;

10  occasionally climb, stoop, kneel, crouch, crawl, and reach overhead; frequently

11  handle, finger, and reach; and had no limitations in feeling or environmental

12  restrictions.  *Id.* at 554-59.  Dr. McPhee also noted that plaintiff had been

13  prescribed Tylenol and Flexeril but had stopped these medications during her 2014

14  pregnancy.  *Id.* at 555.

15      *Dr. Janeen DeMarte*

16         Dr. Janeen DeMarte conducted a consultative psychiatric examination of

17  plaintiff on July 19, 2014.  *Id.* at 525-31.  Plaintiff alleged she suffered from

18  chronic pain syndrome, PTSD, anxiety, depression, and back injury.  *Id.* at 525.

19  Dr. DeMarte diagnosed plaintiff with PTSD, but noted that "her level of

20  functioning does not appear to be drastically impacted with this disorder" and that

21  plaintiff's pain was "her biggest barrier."  *Id.* at 529.  Dr. DeMarte opined plaintiff

22  did not have any impairment in the following areas: understanding and memory;

23  sustained concentration and persistence; social interaction; and adapting to change.

24  *Id.* at 530.

25

26

---

27      [3]   Although the ALJ refers to the opinion of Dr. Neil McPhee (AR at 23) – and
other agency records do the same (*see, e.g., id.* at 128, 144) – the exhibit the ALJ

28  cites to, Exhibit 17F, contains the opinion of Dr. Lucia McPhee.

### c.   **State Agency Physicians**

State agency physician Dr. Nadine Keer and state agency psychologist Dr. David Yandell evaluated and diagnosed plaintiff with severe spine disorder and severe affective disorder. *Id*. at 134.  Drs. Keer and Yandell opined plaintiff had no restriction of activities of daily living, difficulties in maintaining social functioning, or difficulties in maintaining concentration, persistence, or pace, and found insufficient evidence of repeated episodes of decompensation of extended duration. *Id*. at 134.  They opined plaintiff could: lift or carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for about six hours in an eight-hour workday; and occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. *Id*. at 136-37.  Drs. Keer and Yandell further opined plaintiff was precluded from climbing ladders, ropes, or scaffolds. *Id*. at 137.

State agency physician Dr. Thomas Disney and state agency psychologist Dr. Mary Downs evaluated and diagnosed plaintiff with severe spine disorder, non-severe affective disorder, and non-severe anxiety disorder. *Id*. at 149.  Drs. Disney and Downs opined plaintiff had mild restrictions in activities of daily living and difficulties in maintaining concentration, persistence, or pace, and no difficulties in maintaining social functioning and repeated episodes of decompensation of extended duration. *Id*. at 149-50.  Drs. Disney and Downs opined plaintiff could: lift or carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for about six hours in an eight-hour workday; and occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; but could never climb ladders, ropes, or scaffolds. *Id*. at 152-53.

### 2.   **The ALJ's Findings**

In reaching his physical RFC determination, the ALJ did not expressly state which opinions he gave the most weight, but his discussion suggests he gave the greatest weight to the opinions of the state agency physicians because he adopted

their opinions in their entirety, apart from an additional limitation the ALJ imposed for plaintiff's environmental limitations. *See id.* at 19, 24. The ALJ also gave weight to the findings of Dr. DeMarte, Dr. McPhee, and medical providers including Dr. Lisa Stearns at the Center for Pain and Supportive Care, all of whose findings the ALJ explicitly found "persuasive" or "convincing." *Id.* at 23-24. The ALJ rejected the opinion of R.N. Mainhart, and found the opinions of Dr. Dunlop and Dr. Wells "not persuasive" or "not convincing." *Id.* at 22.

The ALJ gave one reasons for rejecting Dr. Dunlop's opinion as to plaintiff's physical limitations, that Dr. Dunlop concluded plaintiff had poor functioning and could not perform even sedentary work, but his physical examination findings were unremarkable and did not contain significant objective findings that would have supported such a conclusion. *Id.* The ALJ gave multiple reasons for rejecting Dr. Dunlop's opinion as to plaintiff's mental limitations: (1) Dr. Dunlop opined on plaintiff's mental disorders but is not a psychologist or psychiatrist; (2) Dr. Dunlop did not report any substantial mental health findings; (3) plaintiff denied any disabling mental disorder at the hearing; and (4) no medical source reported significant mental health findings, and there is no evidence in the record of significant mental health treatment. *Id.*

The ALJ determined plaintiff suffered from severe physical impairments, namely, a history of third degree burn injuries, status post multiple reconstructive surgeries, and residual chronic pain syndrome due to nerve damage. AR at 18. But he did not accept the functional limitations opined by Dr. Dunlop because his physical examination findings were unremarkable and there were no significant objective findings that supported his conclusions. *Id.* at 22. Dr. Dunlop largely acknowledged this himself, noting his laboratory findings were normal, but "there are really no labs that can identify pain syndromes, depression, PTSD, and IBS." *Id.* at 540. He later noted that while "[t]here are no labs to evaluation these

12

1  diagnoses," plaintiff did have "12/18 tender points necessary to diagnose

2  fibromyalgia." *Id.* at 836.

3     The Commissioner has recognized that some impairments do not manifest in

4  a standard way and cannot easily be diagnosed or evaluated using standard

5  diagnostic tools.  Complex regional pain syndrome is such an impairment.  Social

6  Security guidance on Reflex Sympathetic Dystrophy Syndrome ("RSDS") and

7  Complex Regional Pain Syndrome ("CRPS") explains:

8        RSDS/CRPS is a chronic pain syndrome . . . . It may be noted in the

9        treatment records that these signs are not present continuously, or the signs

10       may be present at one examination and not appear at another.  Transient

11       findings are characteristic of RSDS/CRPS . . . . It should be noted that

12       conflicting evidence in the medical record is not unusual in cases of RSDS

13       due to the transitory nature of its objective findings and the complicated

14       diagnostic process involved.  Clarification of any such conflicts in the

15       medical evidence should be sought first from the individual's treating or

16       other medical sources.

17 Social Security Ruling ("SSR") 03-02p.

18     Where, as here, plaintiff was diagnosed with complex regional pain

19 syndrome and chronic pain by multiple medical providers, the ALJ erred by

20 discounting Dr. Dunlop's opinion on the sole ground that his physical examination

21 findings were unremarkable and did not contain any other significant objective

22 findings.  *See Hunt v. Astrue*, 2009 WL 1519543, at *5 (C.D. Cal. May 29, 2009)

23 (noting that "RSDS/CRPS is a disease diagnosed primarily based on subjective

24 complaints" and may not necessarily be supported by evidence such as x-rays or

25 laboratory tests).

26     Contrary to defendant's argument, the ALJ gave no other reason to reject Dr.

27 Dunlop's opinion as to plaintiff's physical functional limitations.  Although the

28

1   ALJ characterized Dr. Dunlop's treatment of plaintiff as conservative (*see* AR at

2   21), this was not a reason the ALJ gave for finding Dr. Dunlop's conclusions

3   unpersuasive. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review

4   only the reasons provided by the ALJ in the disability determination and may not

5   affirm the ALJ on a ground upon which he did not rely." (citation omitted)).  And

6   in any event, as discussed below, this was not a legitimate reason to discount Dr.

7   Dunlop's opinion in any event.  Likewise, the ALJ did not cite plaintiff's activities

8   or any other basis for rejecting Dr. Dunlop's opinion as to plaintiff's physical

9   limitations.  The ALJ gave only one reason to reject Dr. Dunlop's opinion as to

10   plaintiff's physical limitations, and that reason was not specific and legitimate.

11        As to plaintiff's mental limitations, the ALJ gave several reasons to discount

12   Dr. Dunlop's opinion.  Dr. Dunlop opined plaintiff suffered from depression and

13   PTSD, and that plaintiff had poor concentration and difficulty adapting to her

14   environment in part due to these conditions. *Id.* at 538-44, 601, 835-40.  Dr.

15   Dunlop also opined plaintiff's depression and PTSD contributed to her physical

16   symptoms and limitations. *Id.*

17        The first reason the ALJ gave to reject this opinion was Dr. Dunlop's lack of

18   expertise in psychology or psychiatry.  Because Dr. Dunlop was plaintiff's treating

19   physician, the ALJ must consider his opinion regardless of speciality. *See* 20

20   C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c); *Lester*, 81 F.3d at 830.  Nevertheless,

21   the ALJ may give greater weight to the opinion of a specialist than to the opinion

22   of a non-specialist. *See Orn*, 495 F.3d at 631 ("Additional factors relevant to

23   evaluating any medical opinion . . . include . . . the specialty of the physician

24   providing the opinion."); *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001).

25   The fact that Dr. Dunlop, a family physician, is not a specialist in psychology or

26   psychiatry was a valid basis for giving his opinion less weight.

27        The other reasons the ALJ gave for rejecting Dr. Dunlop's opinion as to

28

plaintiff's mental limitations – Dr. Dunlop and did not report any substantial mental health findings, plaintiff denied any disabling mental disorder at the hearing, no other medical source reported significant mental health findings, and there is no evidence in the record of significant mental health treatment – are related.  In essence, Dr. Dunlop's findings were not supported by the record, including his own treatment records.  Dr. Dunlop's treatment records include no findings that would serve as the basis for his diagnoses of depression and PTSD. *See, e.g.*, AR at 602, 604, 841 (finding plaintiff easily tearful but otherwise with normal or intact insight, judgment, memory, mood, and affect).  It is not entirely fair to say, as the ALJ did, that plaintiff denied any disabling mental disorder at the hearing; rather, she testified her mental health problem "comes and goes," and was worse when she was working.  *Id.* at 97.  Nonetheless, her testimony emphasized that her pain was the focus of her problems.  *Id.* at 94-98.  Likewise, as recounted above, although plaintiff received some limited treatment for anxiety such as learning relaxation techniques, this was largely related to her chronic pain, and not significant mental health treatment.  Dr. DeMarte diagnosed plaintiff with PTSD, but found it did not impact her functioning.  *Id.* at 529-30.

Accordingly, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Dunlop's opinion on plaintiff's mental impairments.  But the ALJ did not provide a specific and legitimate reason for rejecting Dr. Dunlop's opinion on plaintiff's physical impairments.

**B.**    **The ALJ Failed to Properly Consider Plaintiff's Subjective Complaints**

Plaintiff also argues the ALJ failed to provide clear and convincing reasons to discount her subjective symptom testimony.  P. Mem. at 17-21.

The ALJ must clearly articulate specific reasons for the weight given to a claimant's alleged symptoms, supported by the record.  SSR 16-3p.  To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step

1    analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the

2    ALJ must determine whether a claimant produced objective medical evidence of an

3    underlying impairment "'which could reasonably be expected to produce the pain

4    or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d

5    341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

6    malingering, an "ALJ can reject the claimant's testimony about the severity of her

7    symptoms only by offering specific, clear and convincing reasons for doing so."

8    *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

9    The ALJ may consider several factors in weighing a claimant's testimony,

10   including:  (1) ordinary techniques of credibility evaluation such as a claimant's

11   reputation for lying; (2) the failure to seek treatment or follow a prescribed course

12   of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d

13   1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

14          At the first step, the ALJ found that plaintiff's medically determinable

15   impairments could reasonably be expected to cause the symptoms alleged.  AR at

16   25.  At the second step, because the ALJ did not find any evidence of malingering,

17   the ALJ was required to provide clear and convincing reasons for discounting

18   plaintiff's testimony.  Here, the ALJ discounted plaintiff's testimony because: (1)

19   her allegations were not supported by the "mild medical evidence"; and (2) the

20   extent of plaintiff's activities since the alleged onset date were inconsistent with

21   her subjective symptom testimony.  *Id.* at 20.

22          The lack of supporting objective medical evidence is a factor that may be

23   considered when evaluating the credibility of a claimant's subjective complaints.

24   *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative

25   objective medicine may be one factor in evaluating credibility); *Bunnell*, 947 F.2d

26   at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on

27   a lack of objective medical evidence to fully corroborate the alleged severity of

28

pain"). But as discussed above, because plaintiff suffers from chronic pain that may not be evident from laboratory tests or other clinical findings, it was error for the ALJ to discount plaintiff's subjective symptom testimony because of the lack of significant medical findings. *See Hunt*, 2009 WL 1519543, at *5-6 (legal error where an ALJ relied on an absence of objective medical findings as a basis for discrediting plaintiff's testimony to the pain caused by her complex regional pain syndrome).

The ALJ's reference to "mild medical evidence" is somewhat vague, and arguably could be read to include his later references to plaintiff's conservative treatment. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). As discussed above, plaintiff's treatment was largely conservative, including chiropractic treatment, alternative medicine, and little in the way of narcotic or other prescription pain relief. *See Tommasetti*, 533 F.3d at 1040 (characterizing physical therapy and anti-inflammatories as conservative); *Lane v. Colvin*, 2013 WL 3449631, at *2 (C.D. Cal. Jul. 9, 2013) (chiropractic treatment is conservative). But plaintiff's treatment was extensive, and contrary to plaintiff's contention (*see* P. Mem. at 20), the ALJ explicitly recognized that plaintiff tried multiple pain medications over the years with no relief, and also tried acupuncture, physical therapy, yoga, chiropractic manipulation, massage therapy, a TENS unit, and herbal supplements. AR at 21-24. To the extent the ALJ's reference to "mild medical evidence" encompassed this extensive treatment, it was not a clear and convincing reason to discount plaintiff's testimony. Although this treatment was largely conservative, defendant does not point to any less conservative treatment one would expect to see for someone with complex regional pain syndrome, apart from stronger pain medication. The lack of prescription pain medication would be a good basis to

17

1   discount plaintiff's testimony were there no explanation for it, but there was.  As

2   recounted above, Dr. Dunlop explained the lack of prescription pain medication

3   was due to plaintiff's poor prior experiences with such medications, including side

4   effects and ineffectiveness.  *Id.* at 538, 544; *see Carmickle*, 533 F.3d at 1162

5   (citing *Orn*, 495 F.3d at 638) ("[A]lthough a conservative course of treatment can

6   undermine allegations of debilitating pain, such fact is not a proper basis for

7   rejecting the claimant's credibility where the claimant has a good reason for not

8   seeking more aggressive treatment.").

9        The second main reason the ALJ gave for discounting plaintiff's testimony

10  was her activities of daily living.  Plaintiff testified at the hearing that she suffers

11  from constant pain that is widespread throughout her body, and that her limitations

12  include being unable to do anything two to three days a month because of her pain,

13  standing for more than 15 minutes without taking a break, and sitting for more than

14  10 minutes before having to change positions.  *Id.* at 94-101.  Plaintiff also testified

15  that she takes care of her two young children, goes grocery shopping, does light

16  cleaning, cooks simple meals, goes out to eat approximately once a week, goes to

17  the gym about two to three times per week, reads, rarely entertains friends, traveled

18  to Europe for a month in 2013, and visited Portland and Arizona.  *Id.* at 106-15.

19       Inconsistency between a claimant's daily activities and alleged symptoms

20  may be a clear and convincing reason for finding her less than fully credible.  *See*

21  *Tommasetti*, 533 F.3d at 1039.  That plaintiff is capable of performing some

22  household chores and taking care of her children was not a clear and convincing

23  reason to find her testimony less credible, particularly given that plaintiff explained

24  she modifies her activities to accommodate her pain, such as by limiting herself to

25  preparing simple meals and doing light cleaning.  Similarly, that plaintiff exercises

26  to alleviate her pain, per the recommendation of her medical providers, was not a

27  clear and convincing reason to find plaintiff's testimony less credible.

28

Whether plaintiff's travel history was a valid basis for discounting the credibility of her symptom testimony presents a closer question.  Plaintiff testified she traveled to Switzerland, Italy, and Hungary for a month in 2013, and that she also visited Portland when she and her husband were considering moving there. *Id.* at 108-10.  That a plaintiff is capable of going on vacation is not necessarily a clear and convincing basis for discounting the credibility of his testimony.  *See Wilson v. Comm'r*, 303 Fed. Appx. 565, 566 (9th Cir. 2008) (evidence that plaintiff occasionally drove to Phoenix and took a vacation to Hawaii was not inconsistent with plaintiff's testimony because these activities were "sporadic and punctuated with rest"); *but see Tommasetti*, 533 F.3d at 1040 (plaintiff's ability to travel to Venezuela to care for her ailing sister for an extended period of time was a clear and convincing reason to discount the credibility of her testimony).  Although plaintiff here traveled for an extended period of time in Europe, she testified that she had to arrive a week before the rest of her family so that she could recuperate, and also stayed at her friend's home in Hungary afterward so that she could recuperate before traveling home.  AR at 109-10.  Plaintiff's international travel in 2013 was thus "sporadic and punctuated with rest," much like the travel at issue in *Wilson*.  As for plaintiff's trip to Portland, plaintiff did not explain if she modified her activities to account for her pain, but stated that the reason for her trip was because she and her husband were considering moving there.  This trip too is not indicative of regular travel or activities that would suggest plaintiff's abilities are greater than alleged.  *See Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) (the capacity to engage in periodic, restricted travel was not a clear and convincing reason to find plaintiff's testimony less credible).

Accordingly, the ALJ failed to cite a clear and convincing reason supported by substantial evidence to find plaintiff's subjective complaints less than fully credible.

**V.**

**REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, there are outstanding issues to be resolved and remand is required.  On remand, the ALJ shall reconsider Dr. Dunlop's opinion concerning plaintiff's physical impairments, and either credit his opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it.  The ALJ shall also reconsider plaintiff's testimony, and either credit her subjective complaints or provide clear and convincing reasons for rejecting them.  The ALJ shall then

1   reassess plaintiff's RFC, and proceed through steps four and five to determine what
2   work, if any, plaintiff was capable of performing during the relevant period.

3                                              **VI.**

4                                      **<u>CONCLUSION</u>**

5          IT IS THEREFORE ORDERED that Judgment shall be entered
6   REVERSING the decision of the Commissioner denying benefits, and
7   REMANDING the matter to the Commissioner for further administrative action
8   consistent with this decision.

9

10  DATED:  May 19, 2020

11

12                                              _____
                                               SHERI PYM
13                                             United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                               21